1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL LADONTE SCOTT,

Petitioner,

v.

ROBERT W. FOX,

Respondent.

No.  2:18-cv-2687 TLN KJN P

ORDER AND FINDINGS AND
RECOMMENDATIONS

Petitioner is a state prisoner, proceeding pro se and in forma pauperis.  Petitioner challenges his 2012 conviction for kidnapping and forcible sexual offenses with use of a weapon. Petitioner claims that he suffered the ineffective assistance of counsel, and was misadvised by the trial court concerning the sex offender registration requirement.  After careful review of the record, this court concludes that the petition should be denied.

I.  Facts and Procedural History

1.  On September 4, 2010, as amended on November 4, 2010, the Sacramento County District Attorney filed a felony complaint charging petitioner with kidnapping and eight other felony counts, including corporal injury to a former cohabitant.  People v. Scott, No. 10F05927 (Superior Ct. Sacramento Co. Cal.).  (ECF No. 58-3 at 122-28.)

2.  On September 17, 2010, petitioner was arraigned.  (ECF No. 58-1.)  Defense counsel requested a continuance on October 4, 2010, to "address discovery issues."  (ECF No. 58-2.)  Jury

1

1    trial was set for November 30, 2010.  (Id.)

2        3.  Petitioner contends he and the victim were not present in court on November 30, 2010

3    (ECF No. 1), which respondent does not dispute (ECF No. 57 at 10).

4        4.  Defense counsel requested that the matter trail until December 6, 2010, because both

5    sides needed time to prepare.  (ECF No. 1 at 8.)  Proceedings continued to be delayed over the

6    next year for different reasons, including evaluations to determine whether petitioner was

7    competent to stand trial.[1]  (See, e.g., ECF No. 58-3 at 50-62.)

8        5.  On January 3, 2012, jury trial began.  (ECF No. 58-4.)

9        6.  During petitioner's jury trial, petitioner opted to change his plea.[2]  (ECF No. 58-5 at 2.)

10   On January 17, 2012, in Sacramento County Superior Court, petitioner pleaded guilty to spousal

11   abuse, kidnapping, assault with a deadly weapon, oral copulation by force, forcible rape, and

12   sodomy by force, with two enhancements.  (ECF No. 17-1.)  On March 23, 2012, petitioner was

13   sentenced to 35-years in state prison.  (Id.)

14       7.  Petitioner did not file an appeal.  On December 14, 2018, the California Court of

15   Appeal for the Third Appellate District denied petitioner's request for permission to file a notice

16   of appeal under the constructive filing doctrine.  (ECF No. 17-3.)

17       8.  Petitioner filed six pro se state post-conviction challenges.  (ECF Nos. 17-2, 17-4, 17-

18   6, 17-8, 17-10, & 17-12.)

19       9.  On October 19, 2017, the Sacramento County Superior Court denied the petition for

20   writ of habeas corpus in a reasoned decision.  (ECF No. 17-5.)

21       10.  On November 1, 2017, the Court of Appeal for the State of California, Third

22   Appellate District, denied the petition for writ of habeas corpus without comment.  (ECF No. 17-

23   7.)

24   _____

25   [1]  The Speedy Trial Act is tolled during mental competency proceedings.  Rule 4.130(c)(3), Cal.
     R. Court.  On April 22, 2011, the court found petitioner competent to stand trial.  (ECF No. 58-3
26   at 52.)

27   [2]  At the subsequent change of plea hearing, defense counsel advised the court that petitioner was
     "taking some psychotropic medication, however in [counsel's] opinion it has not affected his
28   ability to make this decision today."  (ECF No. 66 at 65.)  Petitioner so confirmed.  (Id.)

11. On December 21, 2017, the Court of Appeal for the State of California, Third Appellate District, denied the petition for writ of habeas corpus without comment. (ECF No. 17-9.)

12. On April 11, 2018, the California Supreme Court, sitting en banc, denied the petition for writ of habeas corpus citing In re Robbins, 18 Cal. 4th 770, 780 (1998) (courts will not entertain habeas corpus claims that are untimely).[3] (ECF No. 17-11.)

13. Petitioner filed the instant petition on October 1, 2018.[4] (ECF No. 1.) Respondent filed an answer (ECF No. 57), and petitioner filed a traverse[5] (ECF No. 74).

II. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

---

[3] The California Supreme Court's case docket sets forth additional citations in support of the denial: In re Clark, 5 Cal. 4th 760, 767-69 (1993) (courts will not entertain habeas corpus claims that are successive). Individual claims are denied, as applicable. (See In re Dixon, 41 Cal.2d 756, 759 (1953) (courts will not entertain habeas corpus claims that could have been, but were not, raised on appeal; In re Miller, 17 Cal.2d 734, 735 (1941) (courts will not entertain habeas claims that are repetitive). (ECF No. 17-13.)

[4] Respondent previously filed a motion to dismiss on the grounds that this action was filed after the statute of limitations expired, and still contends that the instant petition is untimely. (ECF No. 57 at 2.) However, respondent requested to withdraw the motion because resolution of the case on the merits would possibly avoid a complex statute of limitations analysis; the undersigned granted such request. (ECF Nos. 39, 41; see ECF No. 41 at 1, n.1.)

[5] Petitioner filed multiple traverses in this action, apparently due to his confusion about whether the court received them. (See ECF Nos. 61, 66, 70:2-70, & 74.) Because petitioner noted amending his traverse (ECF No. 72), the undersigned considers the January 6, 2020 traverse as his amended traverse (ECF No. 74). Petitioner refers to previously-filed exhibits (ECF No. 66 at 10-74); therefore, the court directs the Clerk to append copies of such exhibits to the operative traverse to make the record clear going forward.

1
2
3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

4
5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

6
7

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8   28 U.S.C. § 2254(d).

9        For purposes of applying § 2254(d)(1), "clearly established federal law" consists of

10  holdings of the United States Supreme Court at the time of the last reasoned state court decision.

11  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.

12  38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v.

13  Taylor, 529 U.S. 362, 412 (2000)). Circuit court precedent "may be persuasive in determining

14  what law is clearly established and whether a state court applied that law unreasonably." Stanley,

15  633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit

16  precedent may not be "used to refine or sharpen a general principle of Supreme Court

17  jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall

18  v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155

19  (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so

20  widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court,

21  be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of

22  an issue, it cannot be said that there is "clearly established Federal law" governing that issue.

23  Carey v. Musladin, 549 U.S. 70, 77 (2006).

24        A state court decision is "contrary to" clearly established federal law if it applies a rule

25  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

26  precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003).

27  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

28  writ if the state court identifies the correct governing legal principle from the Supreme Court's

1   decisions, but unreasonably applies that principle to the facts of the prisoner's case. [6] Lockyer v.

2   Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d

3   997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ simply

4   because that court concludes in its independent judgment that the relevant state-court decision

5   applied clearly established federal law erroneously or incorrectly.  Rather, that application must

6   also be unreasonable." Williams v. Taylor, 529 U.S. at 411.  See also Schriro v. Landrigan, 550

7   U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its

8   'independent review of the legal question,' is left with a '"firm conviction"' that the state court

9   was '"erroneous."'").  "A state court's determination that a claim lacks merit precludes federal

10  habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

11  decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541

12  U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for obtaining habeas corpus from a federal

13  court, a state prisoner must show that the state court's ruling on the claim being presented in

14  federal court was so lacking in justification that there was an error well understood and

15  comprehended in existing law beyond any possibility for fair-minded disagreement." Richter,

16  562 U.S. at 103.

17        If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

18  court must conduct a de novo review of a habeas petitioner's claims.  Delgadillo v. Woodford,

19  527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

20  (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of

21  § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by

22  considering de novo the constitutional issues raised.").

23        The court looks to the last reasoned state court decision as the basis for the state court

24  judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

25  If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

26  ───────────────

27  [6]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
    overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
    presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford,

28  384 F.3d 628, 638 (9th Cir. 2004)).

previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Richter, 562 U.S. at 99.  This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely."  Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits.  Johnson v. Williams, 568 U.S. 289, (2013) (citing Richter, 562 U.S. at 98.  If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court.  Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d).  Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims.  Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

6

1   decision of [the Supreme] Court." Id. at 101.  The petitioner bears "the burden to demonstrate

2   that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d

3   925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

4          When it is clear, however, that a state court has not reached the merits of a petitioner's

5   claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal

6   habeas court must review the claim de novo.  Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462

7   F.3d 1099, 1109 (9th Cir. 2006).

8   III.  Governing Legal Principles

9          The Supreme Court has explained that:

10              a guilty plea represents a break in the chain of events which has
               preceded it in the criminal process. When a criminal defendant has
11              solemnly admitted in open court that he is in fact guilty of the offense
               with which he is charged, he may not thereafter raise independent
12              claims relating to the deprivation of constitutional rights that
               occurred prior to the entry of the guilty plea.  He may only attack the
13              voluntary and intelligent character of the guilty plea by showing that
               the advice he received from counsel was not within the standards set
14              forth in McMann.

15   Tollett v. Henderson, 411 U.S. 258, 267 (1973), citing McMann v. Richardson, 397 U.S. 759, 771

16   (1970).[7]  In other words, parties "who voluntarily and intelligently plead[ ] guilty to a criminal

17   charge may not subsequently seek federal habeas corpus relief on the basis of pre-plea

18   constitutional violations."  Hudson v. Moran, 760 F.2d 1027, 1029-30 (9th Cir. 1985).  The only

19   challenges left open on federal habeas corpus review concern the (i) voluntary and intelligent

20   character of the plea and (ii) adequacy of the advice of counsel.  Womack v. Del Papa, 497 F.3d

21   998, 1002 (9th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 56-57 (1985)).[8]

22   _____

23   [7] Tollett applies with equal force to a no contest plea.  Cal. Penal Code § 1016 ("[A] plea of nolo
     contendere shall be considered the same as a plea of guilty. . . .  The legal effect of such a plea, to
24   a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes."); see
     also Ortberg v. Moody, 961 F.2d 135, 137-38 (9th Cir. 1992) (applying Tollett to no contest
25   plea).  Accordingly, federal constitutional principles governing guilty pleas apply to petitioner's
     claims in the instant action.  Miller v. McCarthy, 607 F.2d 854, 856 (1979).

26
     [8] There are exceptions to this general bar.  For example, a defendant who pleads guilty may raise
27   in habeas corpus proceedings a double jeopardy claim and may challenge the court's jurisdiction.
     See Haring v. Prosise, 462 U.S. 306, 320 (1983), citing Blackledge v. Perry, 417 U.S. 21, 30
28   (1974), and Menna v. New York, 423 U.S. 61 (1975).  No exception applies here.

1       To establish a constitutional violation based on ineffective assistance of counsel, a

2   petitioner must show (1) that counsel's representation fell below an objective standard of

3   reasonableness, and (2) that counsel's deficient performance prejudiced the defense.  Strickland v.

4   Washington, 466 U.S. 668, 692, 694 (1984).  Prejudice means that the error actually had an

5   adverse effect on the defense.  There must be a reasonable probability that, but for counsel's

6   errors, the result of the proceeding would have been different.  Id. at 693-94.  The court need not

7   address both prongs of the Strickland test if the petitioner's showing is insufficient as to one

8   prong.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of

9   sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

10      The Strickland standard also applies to challenges to counsel's performance during the

11  plea bargain process.  See Lafler v. Cooper, 566 U.S. 156, 162 (2012) ("During plea negotiations,

12  defendants are 'entitled to the effective assistance of competent counsel.'") (quoting McMann,

13  397 U.S. at 771).  Specifically, "a defendant has the right to make a reasonably informed decision

14  whether to accept a plea offer."  See Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002)

15  (citation omitted).  To establish prejudice from ineffective assistance during the plea bargain

16  process, petitioner must demonstrate that, but for counsel's errors, the outcome of the process

17  would have been different.  See Lockhart, 474 U.S. at 59.

18      Under California state law, Penal Code section 1382, California's Speedy Trial Act is part

19  of California's speedy trial scheme and generally provides that in a felony case a person must be

20  brought to trial within 60 days of an arraignment or indictment or else the action shall be

21  dismissed, with certain exceptions.  See Cal. Penal Code § 1382(a)(2).  Generally, "an order

22  dismissing an action for violation of the speedy trial statute is a bar to further prosecution for the

23  same offense if it is a misdemeanor, but not if it is a felony or a misdemeanor joined with a

24  felony. . . .  Therefore, a new felony action may ordinarily be instituted after the dismissal and

25  within the period of the statute of limitations."  See Dryg v. Mitchell, 2009 WL 1010520, at *8

26  (N.D. Cal. Apr. 13, 2009) (internal citation omitted) (addressing section 1381.5); People v.

27  Lilliock, 71 Cal. Rptr. 434 (Cal. App. Dist. 2 1968) (dismissal of prior action on defense motion

28  for failure to retry defendant on murder charge within 60 days of remittitur did not bar refiling of

8

1  second action), <u>overruled on other grounds by</u> <u>People v. Flood</u>, 18 Cal. 4th 470 (Cal. 1996).

2  Criminal defendants have "the right to a speedy and public trial."  U.S. Const., amend. VI;

3  <u>see also</u> <u>Doggett v. United States</u>, 505 U.S. 647, 651 (1992).

4  IV.  <u>Petitioner's Claims</u>

5  A.  <u>Claim One</u>

6  Petitioner alleges defense counsel was ineffective because counsel twice continued

7  petitioner's trial, on November 30, 2010, and December 6, 2010, in violation of the Speedy Trial

8  Act and allegedly without petitioner's knowledge or consent.[9]  (ECF Nos. 1 at 8, 74 at 3; <u>see also</u>

9  ECF No. 66 at 48-49.)  Petitioner objects that the victim and petitioner did not appear in court on

10  such occasions, depriving him of his right to object to the continuances or request dismissal of the

11  case under California Penal Code Section 1382.  In his traverse, petitioner contends that defense

12  counsel was also not in court on December 6, 2010, and such absences deprived petitioner and

13  defense counsel of the ability to object, which would have deprived the state of the ten-day grace

14  period under the Speedy Trial Act.  (ECF No. 74 at 4.)

15  Respondent counters that petitioner's claim under the Speedy Trial Act is barred by

16  petitioner's plea, and petitioner cannot demonstrate <u>Strickland</u> prejudice.

17  As set forth below, the undersigned finds petitioner's first claim is barred under <u>Tollett</u>.

18  1.  <u>State Court Decision</u>

19  The state court denied petitioner's claim as untimely.  (ECF Nos. 17-11, 17-13.)

20  2.  <u>Discussion</u>

21  Petitioner's first claim is solely based on defense counsel's alleged failure or inability to

22  enforce petitioner's right to a speedy trial on two occasions in 2010.  But the alleged violations of

23  petitioner's speedy trial rights occurred long before petitioner entered his no contest plea.  With

24  certain exceptions not applicable here, the law is clear that petitioner may not raise claims of

25  deprivation of his constitutional rights that occurred prior to his plea.  "When a criminal

26  defendant has solemnly admitted in open court that he is in fact guilty of the offense with which

27

28  [9]  Petitioner does not claim that his rights under the U.S. Constitution were violated by the denial of his right to a speedy trial.

9

1  he is charged, he may not thereafter raise independent claims relating to the deprivation of

2  constitutional rights that occurred prior to the entry of the guilty plea." Tollett, 411 U.S. at 267.

3  See also McMann, 397 U.S. at 770-71; Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994) ("As

4  a general rule, one who voluntarily pleads guilty to a criminal charge may not subsequently seek

5  federal habeas relief on the basis of pre-plea constitutional violations"), overruled on other

6  grounds by Lockyer, 538 U.S. at 75-76); Ortberg v. Moody, 961 F.2d 135, 137 (9th Cir. 1992)

7  ("petitioner's nolo contendere plea precludes him from challenging alleged constitutional

8  violations that occurred prior to the entry of that plea"); Hudson v. Moran, 760 F.2d at 1029-30

9  (voluntary and intelligent guilty plea precludes federal habeas relief based upon "independent

10  claims" of pre-plea constitutional violations).)  Because petitioner's ineffective assistance claim

11  against defense counsel relates to conduct that took place long before petitioner entered his plea

12  upon counsel's advice, such claim is barred under the rationale of Tollett.

13      In light of petitioner's guilty plea, he may claim he received ineffective assistance of

14  counsel only based upon defense counsel's advice as it related to the decision to enter his no

15  contest plea.  Any ineffective assistance claims relating to other, earlier actions by his counsel are

16  barred by the holding in Tollett.  See Moran v. Godinez, 57 F.3d at 700.  See also Givens v. Sisto,

17  2010 WL 1875766, at *1 (N.D. Cal. May 7, 2010) ("the only challenges left open in federal

18  habeas corpus after a guilty plea is the voluntary and intelligent character of the plea and the

19  nature of the advice of counsel to plead.").

20      In 2017, the Ninth Circuit held that the rationale of Tollett does not apply if counsel's

21  incompetence "prevents petitioner from making an informed choice whether to plead."  Mahrt v.

22  Beard, 849 F.3d 1164, 1170 (9th Cir. 2017).  But Mahrt is distinguishable because petitioner's

23  ineffective assistance of counsel claim is focused on the alleged inability to enforce the Speedy

24  Trial Act in October and December of 2010, well before the start of trial in 2012.  Here, petitioner

25  does not challenge the advice of trial counsel as it related to his decision to plead no contest, and

26  does not include claims implicating the intelligent or voluntary nature of his plea.  Moreover, the

27  ////

28  ////

10

1   record reflects that petitioner's plea was voluntary.[10]  Indeed, petitioner insisted on pleading no

2   contest to avoid the continuation of trial after the victim testified.

3        Moreover, petitioner waived his right to a speedy trial at the change of plea hearing.  (ECF

4   No. 58-5 at 5.)  Petitioner alleges no facts demonstrating how any delay impacted the voluntary

5   and intelligent character of his no contest plea.  Therefore, any speedy trial claim has been waived

6   and is not cognizable in this federal habeas corpus action.  See Bohn, 956 F.2d at 209.

7        In addition, a claim that petitioner's right to a speedy trial under California's Speedy Trial

8   Act was violated fails to state a cognizable federal habeas claim.  Estelle, 502 U.S. at 67-68 ("In

9   conducting habeas review, a federal court is limited to deciding whether a conviction violated the

10  Constitution, laws, or treaties of the United States."); Smith v. Phillips, 455 U.S. 209, 221 (1982)

11  ("A federally issued writ of habeas corpus, of course, reaches only convictions obtained in

12  violation of some provision of the United States Constitution.")

13       To the extent petitioner claimed that he was denied his Constitutional right to a speedy

14  trial, such claim is also barred by Tollett.  See, e.g., Nigro v. Evans, 399 F. App'x 279, 280, 2010

15  WL 4007576, at *1 (9th Cir. 2010) (prisoner's nolo contendere plea foreclosed pursuit of habeas

16  relief on pre-plea speedy trial violations); Ortberg, 961 F.2d at 136-38 (prisoner could not seek

17  habeas relief based on a claim he was denied his right to a speedy trial that took place before he

18  entered nolo contendere plea); United States v. Bohn, 956 F.2d 208, 209 (9th Cir. 1992) (per

19  curiam) (guilty plea precluded violation of Speedy Trial Act claim).  Petitioner failed to explain

20  how any delay caused by the competency proceedings impacted the voluntary and intelligent

21

22  [10]  Nothing in the record suggests that petitioner's plea was not knowing, intelligent, and
    voluntary.  At the change of plea hearing, petitioner affirmed that he understood the terms of the
23  plea. (ECF No. 58-5 at 7-8.)  Petitioner acknowledged that he understood the constitutional rights
    he was waiving.  (Id. at 5-6.)  Petitioner confirmed that no one had threatened him in order to
24  make him enter the plea; and no one had made any promises to him other than what was stated on
    the record and in open court.  (Id. at 8.)  Petitioner's solemn declarations in open court carry a
25  strong presumption of verity.  See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); see also
    Little v. Crawford, 449 F.3d 1075, 1081 (9th Cir. 2006).  Based on petitioner's affirmations, the
26  trial court found that petitioner knowingly, intelligently and voluntarily waived his constitutional
    rights, and found that there was a factual basis for the plea. (ECF No. 58-5 at 10.)  See also
27  Blackledge, 431 U.S. at 74 (explaining that the findings made by the judge accepting the plea
    "constitute a formidable barrier in any subsequent collateral proceedings").
28

1    character of his no contest plea, especially given that this delay occurred well before the entry of

2    the plea.  Therefore, petitioner's speedy trial claim has been waived and is not cognizable in this

3    federal habeas corpus action.  See Bohn, 956 F.2d at 209.

4         For all of the above reasons, petitioner is not entitled to relief on his first claim because it

5    is barred under Tollett.

6         B.  Claim Two

7         In his second claim, petitioner contends the trial court erred by accepting petitioner's no

8    contest plea to sex offenses without first addressing petitioner and determining that he understood

9    that the sex offender registration requirement would be a life-long requirement, in violation of

10   Rule 11 of the Federal Rules of Criminal Procedure.  (ECF No. 1 at 4.)  In his traverse, petitioner

11   contends that the trial court's failure to properly advise petitioner was an error that misled

12   petitioner, who claims he suffers from severe psychological issues, to believe that his duty to

13   register expired upon his completion of parole.  (ECF No. 74 at 7.)  Such lifelong registration

14   requirement is a harsh sanction requiring specific warning by the trial court.  (ECF No. 74 at 7.)

15   Further, petitioner argues that under Brady v. United States, 397 U.S. 742, 755 (1980), a

16   defendant must be "fully aware of the direct consequences," of a guilty plea in order for the plea

17   to be voluntary, knowing and intelligent.  (ECF No. 74 at 8.)  Petitioner claims that had the trial

18   court properly informed petitioner about the lifelong registration requirement, he would not have

19   entered the plea because of the "attendant detrimental consequences, shame, and public disgrace,"

20   and because petitioner did not commit the sex offenses.  He contends his position is supported by

21   his September 30, 2010 note written to his intake attorney Cunningham at their initial attorney-

22   client interview, where petitioner wrote he would not enter a guilty plea to sex offenses he did not

23   commit, not even for a misdemeanor in exchange for one month in custody.  (ECF No. 74 at 9,

24   citing Ex. E (ECF No. 66 at 74).)

25        Respondent counters, inter alia, that there is no clearly established law requiring trial

26   courts to advise criminal defendants as to collateral consequences of guilty pleas, but that in any

27   event, petitioner cannot demonstrate prejudice under Strickland.

28   ////

1          1.  Change of Plea Hearing

2          At the January 17, 2012 change of plea hearing, the trial judge informed petitioner:  "You

3   will be required, pursuant to [California] Penal Code Section 290 to register as a convicted sex

4   offender with the sheriff or police department wherever you reside."  (ECF No. 58-5 at 7.)

5          2.  Last Reasoned State Court Opinion

6          The state superior court initially found that the petition for writ of habeas corpus was

7   untimely because petitioner failed to provide sufficient documentary evidence justifying his over

8   five-year delay in filing his petition.  (ECF No. 17-5 at 3.)  But even assuming the petition was

9   timely, and the trial court erred in failing to expressly advise petitioner that he was required to

10  register as a sex offender for life, the state court found petitioner did not adequately demonstrate

11  prejudice, stating:

12            In order to show prejudice, Petitioner must demonstrate it is
            reasonably probable he would not have entered into his admission or
13            plea if he had been properly advised.  (In re Moser (1993) 6 Cal. 4th
            342, 352.)
14
            Petitioner claims that, had he known he would have to register as a
15            sex offender for life, he would have not entered his plea.  There is
            nothing in the record, however, to support this assertion.  To the
16            contrary, the record establishes that Petitioner entered his change of
            plea on the sixth day of his jury trial and stipulated that the trial
17            evidence provided a sufficient factual basis for his plea.  Petitioner
            did not object to the Probation Department's recommendation of sex
18            offender registration or the entry of the registration requirement, nor
            did he file a motion to withdraw his plea.  Accordingly, Petitioner
19            has failed to meet his burden of establishing prejudice.  (See People
            v. McClellan (1993) 6 Cal. 4th 367, 378.
20
21  (ECF No. 17-5 at 3.)

22          3.  Governing Standards

23          A guilty plea must be knowing, intelligent and voluntary.  Brady v. United States, 397

24  U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).  "Waivers of constitutional

25  rights not only must be voluntary but must be knowing, intelligent acts done with sufficient

26  awareness of the relevant circumstances and likely consequences."  Brady, 397 U.S. at 748.  The

27  "likely consequences" of which a defendant must be informed are only the direct consequences of

28  the plea.  A defendant need not be informed about the collateral consequences of his plea, and

13

1    failure to so inform him does not render the plea involuntary.  United States v. Delgado-Ramos,

2    635 F.3d 1237, 1239 (9th Cir.2011); see Rodriguez v. Ricketts, 798 F.2d 1250, 1254 (9th Cir.

3    1986) ("Boykin does not require a state court to enumerate all of the rights a defendant waives as

4    long as the record indicates that the plea was entered voluntarily and understandingly.").

5    Whether a consequence is direct or collateral "turns on whether the result represents a definite,

6    immediate and largely automatic effect on the range of the defendant's punishment."  Torrey v.

7    Estelle, 842 F.2d 234, 236 (9th Cir. 1988) (enumerating examples of direct and collateral

8    consequences; citations omitted).

9        4.  Discussion

10       Because there is no clearly established Supreme Court opinion requiring that criminal

11   defendants be informed, in a particular manner, that they will be subject to a lifelong registration

12   requirement, the state superior court's denial of this claim was not unreasonable or contrary to

13   clearly established Supreme Court authority.  See Chaidez v. United States, 568 U.S. 342, 349

14   (2013) (Alito, J., concurring in judgment) (noting that "sex offender registration" is "commonly

15   viewed as collateral" consequence); Delgado-Ramos, 635 F.3d at 1239 (trial court need not

16   advise criminal of "all possible collateral consequences" of the plea during plea colloquy).

17   Petitioner's reliance on Rule 11 of the Federal Rules of Criminal Procedure is also unavailing

18   because it is not clearly established federal law, as defined under 28 U.S.C. § 2254(D)(1).

19   Thompson v. Runnels, 705 F.3d at 1096; see also United States v. Timmreck, 441 U.S. 780, 783-

20   84 (1979) (holding that technical violation of Rule 11 requiring district court to advise defendant

21   of parole term, was "neither constitutional nor jurisdictional").

22       But even on de novo review, petitioner's claim is unavailing.  Initially, the undersigned

23   agrees with respondent that petitioner fails to demonstrate the trial judge's advisement was

24   insufficient.  Petitioner was informed that he would be required to register as a sex offender

25   without any express time limit on such registration, and the judge's use of the word "wherever,"

26   suggests the registration requirement continues until petitioner stops "residing."  Nothing in the

27   trial court's advisement tied the registration period to petitioner's time on parole.

28       Finally, petitioner has not demonstrated that there is "a reasonable probability that, but for

14

1  the error, he would not have entered the plea."  <u>United States v. Dominguez Benitez</u>, 542 U.S. 74,

2  83 (2004).  As evidence that he would not have taken the plea, petitioner points to an intake

3  attorney's September 30, 2010 note in which petitioner stated he would "not accept even a

4  misd[emeanor] for one month in custody," despite being told that the prosecutor would

5  "probably" offer a life sentence.  (ECF No. 66 at 74 (Pl.'s Ex. E.)  Such document is not

6  persuasive given the criminal allegations at the time[11] or the evidence developed through the

7  victim's trial testimony.  Although petitioner now "boldly" states that he would not have accepted

8  the plea and would have gone to trial had he known the sex offender registration was required for

9  life, his self-serving statement is not persuasive in light of the record.  On January 3, 2012, at the

10  beginning of jury trial, the trial judge probed petitioner concerning a pending offer and noted that

11  petitioner's exposure was "118 years-to-life."  (ECF No. 58-4 at 5.)  The victim, petitioner's

12  former girlfriend and cohabitant, gave graphic testimony concerning multiple incidents of

13  domestic violence, including the instant assault, committed by petitioner.  (ECF No. 58-4 at 45-

14  132.)  She also testified that for weeks after the assault, petitioner texted and called the victim

15  numerous times telling her "not to cooperate with the police" and to not speak with a

16  representative from the district attorney's office, Ms. Crosby.  (ECF No. 58-4 at 153-54.)  In light

17  of such strong evidence, it is unlikely petitioner would have achieved a better outcome following

18  trial.  As noted by respondent, the plea agreement provided petitioner with a determinate sentence

19  of 35-years, whereas petitioner was facing the risk of an indeterminate sentence, possibly life in

20  prison, if he declined the offer and went to trial.  Moreover, if convicted, petitioner also would

21  have been required to register as a sex offender for life just as he was required to register as a

22  consequence of his plea.  Consequently, petitioner has not established prejudice from any failure

23  to inform him of the duration of the sex offender registration requirement.

24  _____

25  [11]  The note included a "brief case summary" taken from the police report:  "Appears to be
    allegation that client and CW met consensually, but then once CW in car, client drove her to Sac

26  (from Oakland) without her consent.  Took her to his sister's house, took her cell phone,
    threatened to kill her and/or run a train on her, dragged her kicked her, threatened to beat her with

27  wrench, had her orally copulate him, raped her, sodomized her, poked here with a knife, and beat
    her with an electrical cord.  CW got her phone back and called for help, then escaped and waived

28  down officer."  (ECF No. 66 at 74 (Pl.'s Ex. E).)

1    Accordingly, for all of these reasons, petitioner's second claim should be denied.

2    V.  Evidentiary Hearing

3    An evidentiary hearing is not warranted where, as here, "the record refutes the applicant's

4    factual allegations or otherwise precludes habeas relief."  Schriro, 550 U.S. at 474; see also

5    Cullen v. Pinholster, 563 U.S. 170, 183 (2011) (citing Schriro with approval); Estrada v. Scribner,

6    512 F.3d 1227, 1235 (9th Cir. 2008).  Therefore, petitioner's request for an evidentiary hearing is

7    denied.  (ECF No. 72.)

8    VI.  Conclusion

9    Accordingly, IT IS HEREBY ORDERED that, to clarify the court record, the Clerk of the

10   Court shall edit docket entry No. 74 as "Amended Traverse, and shall file, as ECF No. 74-1,

11   petitioner's exhibits submitted with his prior traverse (ECF No. 66 at 10-74).

12   Further, IT IS RECOMMENDED that the petition for writ of habeas corpus be denied.

13   These findings and recommendations are submitted to the United States District Judge

14   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

15   being served with these findings and recommendations, any party may file written objections with

16   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

17   Magistrate Judge's Findings and Recommendations."  If petitioner files objections, he shall also

18   address whether a certificate of appealability should issue and, if so, why and as to which issues.

19   A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a

20   substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any

21   response to the objections shall be served and filed within fourteen days after service of the

22   objections.  The parties are advised that failure to file objections within the specified time may

23   waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

24   1991).

25   Dated:  July 1, 2020

26

27                                        KENDALL J. NEWMAN
                                          UNITED STATES MAGISTRATE JUDGE
28   /scott2687.157